UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BOB CAJUNE; CYNTHIA CAJUNE; KALYNN KAY AKER; LION 194; JOHN DOE #1; MARY ROE # 1-7; N.W., a minor, by KALYNN KAY AKER.<br><br>Plaintiffs,<br><br>v.<br><br>INDEPENDENT SCHOOL DISTRICT 194 and MICHAEL BAUMANN in his official capacity as Superintendent of Independent School District 194,<br><br>Defendants. | Court File No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

For their complaint against Defendants, Plaintiffs allege as follows:

**INTRODUCTION**

1. In April 2021, Defendant Independent School District 194 ("ISD 194") created a so-called "Inclusive Poster Series" which included two posters with the political slogan, "Black Lives Matter." The two posters also state: "At Lakeville Area Schools we believe Black Lives Matter *and stand with the social justice movement this statement represents*. This poster is aligned to School Board policy and an unwavering commitment to our Black students, staff and community members." (emphasis added).

2. ISD 194 stated to Plaintiff Bob Cajune that "the inclusive posters were requested by many staff and families in our school communities and was a project included

1

within the district's inclusion work this school year," and was "fully supported by our Board of Education."

3. When other ISD 194 taxpayers, such as Bob Cajune, asked that alternative ideological viewpoints be presented alongside the Black Lives Matter posters, such as "Blue Lives Matter" or "All Lives Matter," ISD 194 refused to allow these rival viewpoints, stating "[ISD 194] does not approve of All Lives Matter or Blue Lives Matter posters in the classrooms or other areas of the school, and teachers/school staff are not allowed to wear shirts with these sayings to school;" and "the All Lives Matter and Blue Lives Matter mottos were created specifically in opposition to Black Lives Matter" and that those messages "effectively discount the struggle the Black students have faced in our school buildings and that Black individuals face in our society as a whole."

4. By posting the messages of the Inclusive Poster Series in ISD 194's hallways, ISD 194 approves of and allows the private expression of District taxpayers, students, and staff who support the political ideology of the "Black Lives Matter" movement and organization. At the same time, ISD 194 suppresses divergent viewpoints, such as Plaintiffs'.

5. The link between the phrase, "Black Lives Matter" and the political movement are inextricably intertwined in the minds of the public. Nine-year-old students understand this. Plaintiff N.W. is a nine-year-old student of ISD 194 who stated in ISD 194's June 8, 2021 board meeting: "We all know changing the font or the color of posters

2

does not change the meaning. I am 9 years old, and I know that. You expect me to believe that you did not know what you were doing by making these posters? Come on, people."[1]

6. N.W. also stated at that Board meeting that ""I do not judge people by the color of their skin, I don't really care what color their hair, skin, or eyes is. I judge by the way they treat me….I do not care or look at the color of skin, ***but you make me think of it***. I have Asian, Mexican, white, Chinese, black friends and I don't care. I like them because some of them make me laugh, some are sweet and kind, sporty, or share the love of God. They are just my friends. You have lied to me and I am very disappointed in all of you." (emphasis added).

7. ISD 194's viewpoint discrimination has been confirmed by its collaboration with certain individuals from ISD 194 and outside the District on an event for the upcoming fall called "Different Places, Beautiful Faces," which ISD 194's Equity Coordinator told Cynthia Cajune was to "highlight the diversity of our community, as well as to celebrate People of Color and Indigenous people in Lakeville and its surrounding communities." But when Ms. Cajune sought to include all ethnic backgrounds in the event, those controlling the event declared that "our interests are not aligned" and signed off with, "Black Lives Matter."

8. ISD 194 has instructed children as young as fifth grade that structural racism dominates our society and that Black Lives Matter is a political movement.

---

[1] https://www.washingtonexaminer.com/news/viral-video-minnesota-black-lives-matter-posters-schools.

9. ISD 194's viewpoint discrimination violates the First Amendment and creates a hostile educational environment for students like N.W.. Plaintiffs seek an end to this discriminatory practice.

## PARTIES

10. Plaintiffs Bob and Cynthia Cajune are taxpayers who at all relevant times were residents within ISD 194 and paid taxes which were forwarded to Defendant ISD 194.

11. Plaintiff LION 194 (Liberty In Our Neighborhood 194) is an unincorporated association consisting of ISD 194 residents and taxpayers, including Bob and Cynthia Cajune and the John Doe and Mary Roe Plaintiffs. LION 194 is a faith-based, grassroots organization established by Lakeville parents advocating for the children in ISD 194. Its mission is to foster a school environment that focuses on unity, facts, and the ability to use critical thinking skills. LION 194 has associational standing to sue the Defendants in this matter.

12. Plaintiff Kalynn Kay Aker is the parent and guardian of N.W., a minor. They reside within ISD 194. N.W. attends school within ISD 194. Ms. Aker pays taxes that are allocated to ISD 194.

13. Plaintiffs John Doe #1 and Mary Roes #1-7 reside within ISD 194 and pay taxes that are allocated to ISD 194. They seek to remain anonymous for fear of reprisal from others in the community, including people who intentionally interfered with Bittersweet Bakery's business in Lakeville, including interference with their longstanding contracts.

14. Defendant Independent School District 194 (ISD 194) is an independent school district authorized by and constituting a political subdivision or agency of the State of Minnesota and has at all relevant times operated the public schools in Lakeville.

15. Defendant Michael Baumann has at all relevant times been the superintendent of ISD 194. He is sued in his official capacity.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this complaint under 28 U.S.C. §§ 1331, 2201, 1343(a)(3), 1343(a)(4), and 1367 because this case presents a substantial question of federal law arising under the United States Constitution and its state law claim forms part of the same case or controversy, specifically whether Defendants' speech and exclusionary conduct violates the United States Constitution's guarantee of free speech, Title VI of the Civil Rights Act of 1964, and ISD 194 Policy 535.

17. This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

18. Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1). A substantial part of the events giving rise to this claim occurred in this district, Defendants maintain one or more offices and employees in this district, a substantial part of the property subject to this action is situated in this district, and a plaintiff resides in this district.

## STATEMENT OF THE CLAIM

### The Poster Series

19. On September 22, 2020, Superintendent Michael Baumann issued a memo to ISD 194 educators in which he interpreted ISD 194 Policy 535 to prohibit teachers from displaying in their classrooms posters containing the phrase "Black Lives Matter."

20. Despite this contrary policy, around April 2021, ISD 194 approved an "Inclusive Poster Series" that consisted of eight distinct posters, two of which included the phrase "Black Lives Matter." These "Black Lives Matter posters also included the statement: "At Lakeville Area Schools we believe Black Lives Matter *and stand with the social justice movement this statement represents*. This poster is aligned to School Board policy and an unwavering commitment to our Black students, staff and community members." (emphasis added).

21. The slogan, "Black Lives Matter" is well-known to be a neo-Marxist separatist slogan that identifies Black Americans as "part of the global Black family" and seeks to "disrupt the Western-prescribed nuclear family structure." https://web.archive.org/web/20200917194804/https://blacklivesmatter.com/what-we-believe/ (last visited July 23, 2021). The group "Black Lives Matter at School," for example, expressly includes "antiracist" doctrine as part of its principles. https://www.blacklivesmatteratschool.com/starter-kit.html; https://www.blacklivesmatteratschool.com/publications.html. (last visited July 23, 2021) This same so-called "antiracism" can be summed up by the words of Ibram X. Kendi, the author of "How to Be an Anti-Racist":

> The only remedy to racist discrimination is antiracist discrimination. The only remedy to past discrimination is present discrimination. The only remedy to present discrimination is future discrimination.

Kendi, Ibram. "Ibram X. Kendi defines what it means to be an antiracist," Penguin June 9, 2020, *available at* https://www.penguin.co.uk/articles/2020/june/ibram-x-kendi-definition-of-antiracist.html (last visited July 23, 2021). The phrase "Black Lives Matter" and its part in the "social justice" movement is indistinguishable from these tenets.

22. ISD 194 states in its 2020-2023 Achievement and Integration Plan that it intends to build "anti-racist" classrooms by training teachers on "culturally responsive teaching" practices. https://www.isd194.org/equity.

23. On April 13, 2021, during the Equity Update portion of the ISD 194 Board Regular Meeting, the purpose of the Inclusive Poster Series was given as "to support staff in creating school communities where students are respected, valued and welcome."

24. On April 26, 2021, Plaintiff Bob Cajune sent an email to Lydia Lindsoe, Equity Coordinator for ISD 194, inquiring about the Inclusive Poster Series program and whether posters displaying "All Lives Matter" and "Blue Lives Matter" could be displayed by students and/or teachers in School District 194 schools.

25. That same day, on April 26, 2021, Lydia Lindsoe replied in email, stating, pertinently:

   a. "[ISD 194] does not approve of All Lives Matter or Blue Lives Matter posters in the classrooms or other areas of the school, and teachers/school staff are not allowed to wear shirts with these sayings to school;"
   b. the "purpose of the inclusive poster series is to create unity and ensure a sense of belonging for every student by affirming a wide variety of student identities;"

7

 c. "the inclusive posters ***were requested by many staff and families in our school communities*** and was a project included within the district's inclusion work this school year," and was "fully supported by our Board of Education" (emphasis added);

 d. "the All Lives Matter and Blue Lives Matter mottos were created specifically in opposition to Black Lives Matter" and that those messages "effectively discount the struggle the Black students have faced in our school buildings and that Black individuals face in our society as a whole;"

 e. "the history of Black people in America is singular and needs to be acknowledged;"

 f. "it is important that we specifically affirm Black students in our schools;" and

 g. because "Black people experience ["violence, racism, and oppression"] at the highest rate" and "[n]o other group was ever categorized as property or chattel, and the historical consequences of that experience are real and continue to be felt today," ISD 194 "does not approve All Lives Matter posters or Blue Lives Matter posters in classrooms."

26. According to public reports, "The district said the poster series went through a review process with focus groups that included students, school staff, school building leaders, the School Board, community advisory groups and others."

27. Based on ISD 194's statement on the Black Lives Matter posters themselves (quoted herein), and Defendants' response to Plaintiff Cajune, Defendants' inclusion of these posters is intended to promote the political organization Black Lives Matter and its position in the "social justice movement," which, to a reasonable member of the public, means that ISD 194 supports the viewpoint of Black Lives Matter and its Marxist and Black separatist, supremacist, and racist ideology that is hostile to White people as well as demeaning to Black people.

28. Again, nine-year-olds within ISD 194 understand this. N.W. told the School Board at a recent meeting that its imposition of the Black Lives Matter posters in Lakeville

schools makes her think of the political movement and its judgment of people based on the color of skin.

29. Further, Defendants' argument to Plaintiff Cajune for excluding the phrases "All Lives Matter" and "Blue Lives Matter" acknowledges that Defendants understand that the phrase "Black Lives Matter" is associated with the private political organization of the same name, and, moreover, acknowledges that they intend that association to be understood by their use of the phrase.

30. In addition, because the posters "were requested by many staff and families in our school communities," they are favored private speech of certain members of the ISD 194 community.

## The District's Other Racially Biased Actions

31. The District's other actions indicate its knowledge and support of the racially biased goals of the Black Lives Matter political organization and ISD 194's commitment to viewpoint discrimination.

32. Superintendent Michael Baumann's memo of September 22, 2020, acknowledges that the display of the phrase "Black Lives Matter" carries political significance in violation of ISD 194 Policy 535's prohibition on "conduct that is intended to be or that reasonably could be perceived as endorsing or opposing specific political issues or political candidates." ISD 194 Policy 535(IV)(A)(5).

33. In addition, when Plaintiff Cynthia Cajune proposed that all cultures, such as Japanese, Norwegian, Dutch, Irish, and so on be represented in an event in which ISD 194

is participating, ISD 194's equity coordinator at first stated, "I like where you are going" and then connected her with those leading the planning for the event.

34. But when Ms. Cajune asked those to whom ISD 194 referred her about being part of the planning committee for the event, the response was cold:

> Let me be explicitly clear about the goal and objective of this committee and event: Our committee is focused on centering equity and bringing awareness to the beautiful diversity from the BIPOC community that is becoming lakeville. Fortunately for European heritage and culture, it is represented and overly represented 365 days a year and has been for centuries. This is not the space for that. This event will only focus on the Cultures and Communities of Color that are underrepresented, specifically the BIPOC community….
>
> Finally, let me also be explicitly clear: our interests are not aligned. So while there is no place for you or your husband on this committee, you are welcome to attend the event in October and be enlightened….

The writer of this email signed off with the tag line, "Black Lives Matter."

35. After Ms. Cajune followed up with ISD 194 seeking to know to what extent ISD 194 is "collaborating" with this racially biased event and apparently ISD-194-supported event, ISD 194 went silent and failed to respond to her request for clarification.

36. ISD 194 has also contracted with "equity consultants" who presented to District essential tenets of Critical Race Theory, such as the premise that "Race Neutral" policies and practices "continue to uphold a system where Black, Indigenous, and people of color (BIPOC) experience disproportionately negative outcomes in comparison to white people."

37. As just one other example, ISD 194 has shown to fifth-grade students at Eastview Elementary a video from the "BrainPOP" collection that states that "structural racism" in America "makes life easier for White people and more difficult for Black people

and People of Color." That same video told these fifth-graders that "Black Lives Matter grew into a movement" and praised the City of Minneapolis' 2020 resolution to dismantle the Minneapolis Police Department. https://www.youtube.com/watch?v=xv3dAJUTCT0.

### Refusing to Display Diverging Viewpoints on Race Relations Is Viewpoint Discrimination

38. By displaying the two posters bearing the organizational slogan for Black Lives Matter, ISD 194 violated its own policy against engaging in "conduct that is intended to be or that reasonably could be perceived as endorsing or opposing specific political issues or political candidates." ISD 194 Policy 535(IV)(A)(5).

39. By displaying the "Black Lives Matter" posters on school property, Defendants have made that property a designated public forum and must abide by "the same standards as apply in a traditional public forum," *Perry Educ. Ass'n*, 460 U.S. at 46, "ensuring equality of treatment toward all candidate[s] and issues." ISD 194 Policy 535(IV)(C)(2).

40. By refusing to allow Plaintiffs to display the phrases "All Lives Matter" and "Blue Lives Matter" in classrooms, Defendants intentionally discriminated against those viewpoints in violation of the First Amendment.

41. Moreover, Defendants' intentional display of the "Black Lives Matter" posters has the effect of inciting a racially hostile school environment in violation of Title VI of the Civil Rights Act of 1964.

42. This racially hostile environment created by Defendants is harassing to N.W. and students like her because it promotes racism and racial inequality, instead of unity and

equality. The racially hostile environment created by Defendants leads N.W. and students like her to think of race as a dividing concept.

## CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C. §§ 1983, 1988; FIRST AMENDMENT VIOLATION

43. Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

44. "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector and Visitors of U. of Virginia*, 515 U.S. 819, 828 (1995). When the government discriminates in this way, such discrimination "is presumed to be unconstitutional." *Id*.

45. When the government engages in viewpoint discrimination, it "targets not subject matter, but particular views taken by speakers on a subject." *Id.* at 829. Thus, the government "must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.;* *s*ee *Perry Ed. Assn.,* 460 U.S. at 46.

46. "[T]he test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J., concurring in part).

47. Defendants designated ISD 194 school property as de facto designated public forum when they displayed on ISD 194 school property signs bearing the organizational slogan "Black Lives Matter."

48. Defendants then discriminated against Plaintiffs' viewpoint when they prohibited them from displaying on ISD 194 school property posters with the phrases "All Lives Matter" and "Blue Lives Matter" because those posters constitute the same "subject matter" as "Black Lives Matter." *Id*.

49. Defendants violated Plaintiffs' First Amendment Free Speech rights when Defendants excluded, and thereby discriminated against, Plaintiffs' viewpoint that Plaintiffs wanted displayed alongside Defendants' "Black Lives Matter" posters.

**COUNT II**
**VIOLATION OF TITLE VI (HOSTILE EDUCATIONAL ENVIRONMENT)**

50. Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

51. Upon information and belief, ISD 194 receives federal funding and is subject to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*.

52. Defendants have subjected students at ISD 194 to severe, pervasive, and objectively offensive racial harassment by displaying inherently racially discriminatory posters bearing the organizational slogan "Black Lives Matter," a private political organization advocating a Marxist and Black separatist, supremacist, and racist ideology that is hostile to White people as well as demeaning to Black people.

53. Plaintiff N.W. publicly stated the impact of these posters—that they caused her to think of distinctions between people based on the color of their skin, instead of the content of their character.

54. Plaintiff N.W. also publicly stated that these posters invoke "getting rid of police officers, rioting, burning buildings down."

55. The harassment has a systemic effect on education within the District as a whole.

56. Defendants have control over the source of harassment and the environment in which the harassment occurs.

57. Defendants know of the harassment and are not only deliberately indifferent to it, they encourage it.

58. Defendants' deliberate indifference to the ongoing racially hostile environment violates Title VI of the Civil Rights Act.

## COUNT III
## VIOLATION OF ISD 194 POLICY 535

59. Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

60. ISD 194 Policy 535 states that the District and its employees shall not engage in "conduct that is intended to be or that reasonably could be perceived as endorsing or opposing specific political issues or political candidates." ISD 194 Policy 535(IV)(A)(5).

61. Defendant Baumann himself issued a memo to ISD 194 educators in which he interpreted ISD 194 Policy 535 to prohibit teachers from displaying in their classrooms posters containing the phrase "Black Lives Matter."

62. Nonetheless, ISD 194 is violating that policy by posting "Black Lives Matter" posters in its schools.

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court:

A. Enter a declaratory judgment that Defendants' refusal to allow Plaintiffs to display posters on ISD 194 school property stating "All Lives Matter" or "Blue Lives Matter," while "Black Lives Matter" posters are allowed, violates their First Amendment Free Speech rights promised in the United States Constitution;

B. Enter a declaratory judgment that Defendants' display of the "Black Lives Matter" posters violates Title VI of the Civil Rights Act by creating a hostile educational environment;

C. Enter a declaratory judgment that Defendants' display of the "Black Lives Matter" posters violates ISD 194 Policy 535;

D. Enter an order preliminarily and permanently enjoining Defendants from displaying the "Black Lives Matter" organizational slogan posters, or in the alternative allowing Plaintiffs' viewpoint, including "All Lives Matter" and "Blue Lives Matter," equal space within ISD 194;

E. Award attorney fees in favor of Plaintiffs and against Defendants upon Plaintiffs prevailing in this litigation and after an appropriate motion, pursuant to 42 U.S.C. § 1988;

F. Award costs in favor of Plaintiffs and against Defendants upon Plaintiffs prevailing in this litigation and after filing of a notice of taxation of costs and disbursements;

G. Grant Plaintiffs such other and further relief as the court deems appropriate.

**UPPER MIDWEST LAW CENTER**

Dated: August 6, 2021

/s/ *James V. F. Dickey*
Douglas P. Seaton (#127759)
James V. F. Dickey (#393613)
8421 Wayzata Blvd., Suite 300
Golden Valley, Minnesota 55426
Doug.Seaton@umwlc.org
James.Dickey@umwlc.org
(612) 428-7000

*Attorneys for Plaintiffs*